UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DAN D. MOULDS, JR. and ) | |
| CRYSTLE M. MOULDS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:11-CV-200 |
| v. ) | Chief Judge Curtis L. Collier |
| ) | |
| THE BANK OF NEW YORK MELLON, ) | |
| THE BANK OF NEW YORK MELLON ) | |
| TRUST COMPANY, NATIONAL ) | |
| ASSOCIATION f/k/a THE BANK OF ) | |
| NEW YORK TRUST COMPANY, N.A. ) | |
| as successor to JP MORGAN CHASE BANK ) | |
| N.A., MCC TN, LLC and GMAC ) | |
| MORTGAGE, LLC, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM**

Before the Court is Plaintiffs' Dan D. Moulds, Jr. and Crystle M. Moulds ("Plaintiffs") motion for remand to state court (Court File No. 7) and motion for a temporary restraining order and preliminary injunction (Court File No. 2). Defendants The Bank of New York Mellon Trust Company, National Association ("BNY Mellon Trust"), MCC TN, LLC ("MCC"), and GMAC Mortgage, LLC ("GMAC") (collectively, "Defendants")[1] filed a joint response in opposition to Plaintiffs' motion for remand (Court File No. 21). Defendants also filed a joint response in opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction (Court

---

[1] Bank of New York Mellon ("BNY Mellon") is also a defendant in this case and is represented by the same counsel as BNY Mellon Trust and GMAC. BNY Mellon moves to be dismissed from this action for lack of personal jurisdiction (Court File No. 14). Pending disposition of BNY Mellon's motion to dismiss, however, BNY Mellon will still be treated as a party to this matter even though they are not explicitly mentioned in this memorandum.

File No. 17), and Defendant MCC filed an additional brief opposing the same (Court File No. 32). The parties presented oral arguments on these motions at a hearing on September 9, 2011. After considering the parties' arguments and the available facts, the Court **DENIES** Plaintiffs' motion for remand to state court (Court File No. 7) and **DENIES** Plaintiffs' motion for a temporary restraining order and preliminary injunction (Court File No. 2).

I.   **BACKGROUND INFORMATION**[2]

   A.   **Relevant Facts**

On or about May 31, 2002, Plaintiffs purchased real property located at 11744 Country Estates Drive, Apison, Tennessee (Court File No. 25-1). The deed was recorded and filed on June 18, 2002, in the Register's Office of Hamilton County, Tennessee. Plaintiffs obtained a mortgage on the property in the amount of $228,825.00 (Court File No. 25-2). In consideration of the mortgage, Plaintiffs executed a promissory note and deed of trust with lender Sebring Capital Partners, LP (Court File No. 1-2 at 16). Defendant BNY Mellon Trust later became the successor in interest to Sebring Capital Partners, LP (Court File No. 1-2 at 29).

The deed of trust provided, *inter alia*, instruction on how the lender must give notice to Plaintiffs prior to acceleration or sale of the property following a breach of any covenant or agreement in the deed.

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must

---

[2] The following facts come primarily from counsels' assertions at the hearing and the record before the Court.

be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration . . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Interest without further demand and may invoke the power of sale and any other remedies permitted by Applicable law.

(Court File No. 1-2 at 25). With regard to public notice, paragraph twenty-two of the deed states the following:

> If lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law . . . .

(*id.*). Finally, paragraph fifteen of the deed lists additional notice procedures agreed to by the parties.

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. . . . Any notice required by this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(Court File No. 1-2 at 23).

Plaintiffs eventually fell behind on their mortgage payments. They communicated with an attorney for Defendant MCC, and they allege the attorney gave them GMAC's phone number for the purpose of discussing loan modification (Court File No. 25). Plaintiffs further allege they contacted GMAC and discussed modifying their loan in lieu of any foreclosure proceedings. Plaintiffs contend they detrimentally relied upon the representations made by said Defendants.

In December 2010, Defendants sent Plaintiffs two letters regarding Plaintiffs' default and the upcoming foreclosure sale. Defendants also filed a Notice of Appointment of Substitute Trustee

3

and advertised the foreclosure sale in the *Tennessee Tribune* on three different occasions in March and April 2011. Defendants held the foreclosure sale on April 21, 2011, in Hamilton County, Tennessee. Defendant MCC was the appointed trustee for the foreclosure proceedings. According to the Substitute Trustee's Deed, Defendant BNY Mellon Trust became the owner of the property (Court File No. 1-2 at 31).

**B.     Procedural History**

Plaintiffs filed suit in the Chancery Court of Hamilton County, Tennessee on July 8, 2011. Plaintiffs assert four causes of action against Defendants. In Count One, Plaintiffs allege the foreclosure proceedings were made and conducted based upon negligent and intentional misrepresentations by Defendants without due and proper notice. In Count Two, Plaintiffs assert they are entitled to damages, punitive and/or compensatory, including reasonable attorneys' fees and costs. In Count Three, Plaintiffs contend Defendants' negligent or intentional misrepresentation and/or deceptive acts violated Tenn. Code Ann. § 47-18-104(27) and applicable laws.[3] Finally, in Count Four, Plaintiffs argue they are entitled to a temporary restraining order or a temporary injunction during the pendency of the litigation.

Plaintiffs also filed a motion for an ex-parte temporary restraining order and temporary injunction in state court on July 8, 2011, pursuant to Tennessee Rule of Civil Procedure 65. The Chancery Court granted Plaintiffs' motion for a temporary restraining order on July 8, 2011.

---

[3] With consent of Defendants, Plaintiffs filed a Stipulation of Dismissal regarding their claims under the Tennessee Consumer Protection Act ("TCPA") (Court File No. 23). In Plaintiffs' proposed second amended complaint, Plaintiffs have replaced their TCPA cause of action with a Tennessee common law negligence and intentional misrepresentation claim and a claim alleging "negligence or negligence per se based upon violations of statutes and governmental regulations to include but not limited to the Home Affordable Modification Program (HAMP)" (Court File No. 34-1).

4

Plaintiffs were ordered to submit a bond pursuant to Tenn. R. Civ. P. 65.05 to the Clerk of the Court in the amount of $2,083.00. The court also scheduled the matter to be heard on July 15, 2011, to determine if the restraining order should be made a temporary or permanent injunction.

On July 15, 2011, Plaintiffs appeared for the hearing, but the Chancery Court determined process had not been served on Defendants. The hearing was continued until July 28, 2011, and the court ordered the restraining order previously entered should remain in effect until further order of the state court.

On July 26, 2011, Defendants removed this action to the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1441. Plaintiffs filed both a motion for remand to state court (Court File No. 7) and a motion for a temporary restraining order and preliminary injunction (Court File No. 2). On September 9, 2011, this Court heard oral arguments from both Plaintiffs' and Defendants' counsel.

## II.     MOTION FOR REMAND

Plaintiffs argue this action was improperly removed because this Court lacks subject matter jurisdiction over the claims or causes of action. Pursuant to 28 U.S.C. § 1441, a defendant may remove any civil action filed in state court to federal court if the district court would have had subject matter jurisdiction had the case originally been filed in federal court. "District courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states . . . ." 28 U.S.C. § 1332. The removing party bears the burden of establishing removal was proper. *Conrad v. Robinson*, 871 F.2d 612, 614 (6th Cir. 1989).

First, Plaintiffs contend the amount in controversy requirement has not been met. A

5

defendant seeking to remove an action to federal court bears the burden of showing by a preponderance of the evidence that the amount in controversy requirement has been met. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). A plaintiff's failure "to adequately plead the amount in controversy may be cured by the presence of 'clear allegations . . . that the case involved a sum well in excess of the $75,000 minimum.'" *Id.* at 573 (*Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998)).

In their complaint, Plaintiffs do not explicitly state the amount in controversy. Rather, Plaintiffs aver (1) they "are entitled to relief of the foreclosure sale"; (2) they should be awarded damages, punitive and/or compensatory, as a result of the injuries caused by Defendants; and (3) they are entitled to a temporary restraining order or temporary injunction. Moreover, at the hearing, Plaintiffs argued their failure to include a specific amount prevented Defendants from knowing whether the amount in controversy exceeded $75,000. However, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). In the alternative, "the cost of complying with an injunction . . . may establish the amount in controversy." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006). Plaintiffs argued at the hearing that the value of the object of the litigation, at most, would be approximately $34,000, the amount of their delinquency. However, it is just as reasonable for this Court to conclude, based on Defendants' arguments, that the object of the litigation is the foreclosed property, which was purchased for $186,684.

In addition, Plaintiffs seek an undisclosed amount of damages in this case. Beyond an award

6

of compensatory damages, punitive damages may be included in the "amount in controversy" calculation. *Crosby v. Am. Online, Inc.*, 967 F. Supp. 257, 261 (N.D. Ohio 1997) (citing *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975)); *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983). In order to determine whether this amount should be considered, this Court "need not consider whether it is likely that they will actually be awarded, but rather (1) whether there is some support for such claims alleged in the Complaint, (2) if those claims have been alleged in good faith, and (3) what a likely amount of damages would be if the claims were proven." *See Clark*, 518 F.2d at 1169. Plaintiffs' request for damages appears to be made in good faith and is based on the aforementioned facts. Moreover, although Plaintiffs do not include a specific amount in the complaint, the sum of damages, especially in combination with the value of the foreclosure property, is almost certain to exceed $75,000. Therefore, on these facts, the amount in controversy requirement has been met.

Second, Plaintiffs argue the case lacks complete diversity because Defendant MCC was formed, organized, and registered in Tennessee. However, for purposes of diversity jurisdiction, limited liability companies have the citizenship of each partner or member. *See* 28 U.S.C. § 1332; *V&M Star, LP v. Centimark Corp.*, 596 F.3d 354 (6th Cir. 2010). "The Supreme Court [has] held that a limited partnership, for federal diversity purposes, [does] not have 'citizenship' under the jurisdictional statute established for corporations." *Int'l Flavors & Textures, LLC v. Gardner*, 966 F. Supp. 552, 554 (W.D. Mich. 1997) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 188 n.1 (1990)). Rather, "a limited partnership is deemed to be a citizen of every state where its general and limited partners reside." *Hooper v. Wolfe*, 396 F.3d 744, 748 (6th Cir. 2005) (citing *Carden*, 494 U.S. at 185, 195-96). Citizenship, for natural persons, is determined by a person's domicile, which

requires the court to consider both where a person resides and that person's intent to reside in a particular place. *See Von Dunser v. Aronhoff*, 915 F.2d 1071, 1072 (6th Cir. 1990).

The issue here is whether MCC's members are citizens of another state rather than merely residents of those states. *See Stamper v. Wilson & Assocs., PLLC*, No. 3:09-cv-270, 2010 WL 1408585, at *10 (E.D.Tenn. 2010). MCC asserts it is a citizen of Georgia; its main office is in Atlanta and all three members consider themselves Georgia residents and citizens. Based on these facts, the Court can conclude Defendant MCC is not a Tennessee citizen and the parties are diverse.

Accordingly, the Court finds this case was properly removed by Defendants and will **DENY** Plaintiffs' motion for remand to state court (Court File No. 7).

## II.  INJUNCTIVE RELIEF

Plaintiffs filed a "Motion for Temporary Restraining Order and Temporary Injunction" pursuant to Tenn. R. Civ. P. 65 (Court File No. 2). However, this Court will treat Plaintiffs' motion as a request for a temporary restraining order and a preliminary injunction under Fed. R. Civ. P. 65. Further, because the same general analytical framework applies to both temporary restraining orders and preliminary injunctions,[4] the Court's analysis, although explicitly referencing the preliminary injunction, will pertain to both forms of injunctive relief sought by Plaintiffs.

A preliminary injunction is an extraordinary remedy designed to preserve the relative positions of the parties until a trial on the merits can be held. *Tenn. Scrap Recyclers Ass'n v.*

---

[4] Plaintiffs' request for a temporary restraining order would follow the same four-factor test as applied to preliminary injunctions. *Moncier v. Jones*, No. 3:11-CV-301, 2011 WL 2940442, at *10 (E.D. Tenn. July 19, 2011) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)) (additional citations omitted).

*Bredesen*, 556 F.3d 442, 445 (6th Cir. 2009). Pursuant to Fed. R. Civ. P. 65, in order to grant a preliminary injunction, a district court must consider: "(1) whether the plaintiff[s] [have] established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff[s]; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." *See Babler v. Futhey*, 618 F.3d 514, 519-20 (6th Cir. 2010) (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)). Generally, "these factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

### A. Plaintiffs' Likelihood of Success on the Merits

Plaintiffs contend, *inter alia*, the foreclosure proceedings and sale were made without due and proper notice as required by the deed of trust.[5] Under Tennessee law, "where the time, place, and terms of sale are set out in the deed of trust, the deed of trust controls and must be fully complied with in order to render the sale valid." *Napier v. Stone*, 114 S.W.2d 57, 61 (Tenn. Ct. App. 1937). Alternatively, when these conditions are not fixed in the deed of trust, the statute controls. *Id.* at 14. At the hearing, both parties stipulated that Defendants provided notice in writing to Plaintiffs in December 2010 regarding Defendants' formal demand for payment and notice of foreclosure. Although Plaintiffs assert they should have received a separate notice of foreclosure in writing when the date of public sale changed, the deed does not explicitly provide that Plaintiffs

---

[5] At the hearing, Plaintiffs stipulated the notice issue was the primary matter for the Court to consider with regard to Plaintiffs' motion for a temporary restraining order and preliminary injunction. However, all other issues raised in Plaintiffs' complaint are still applicable to the action as a whole.

9

would receive such additional notice.

Further, Plaintiffs assert Defendants did not provide adequate public notice. The deed provides Defendants shall give notice of sale by "public advertisement in the county in which the Property is located" (Court File No. 1-2 at 25). Defendants published the notice of sale in the *Tennessee Tribune*, pursuant to Tenn. Code Ann. § 35-5-101(a), which requires "advertisement of the sale shall be made at least three (3) different times in *some newspaper published in the county where the sale is to be made*" (emphasis added). Plaintiffs do not contend the language of the statute and deed are in conflict, but rather Defendants' notice, even under the statute, was improper. Plaintiffs cite *Thacker v. Shapiro & Kirsch LLP*, No. E2010-01158-COA-R9-CV, 2011 WL 2449517 (Tenn. Ct. App. June 20, 2011) for the proposition the advertised publication must be in a newspaper of "general circulation" in the particular county where the property is located. In *Thacker*, however, the Tennessee Court of Appeals held that a notice of foreclosure sale regarding property in Roane County was properly published in the *Knoxville News Sentinel*, even though Roane County had its own newpaper, the *Roane County News*. In reaching this conclusion, the court considered the statute's evolution and how the current statute has eliminated language that once required that the notice of sale not just be published, but "printed" in the county of the sale, as well as language requiring that the notice be advertised in the newspaper "having the largest circulation in said county." *Id.* at *2-*3.

Here, Plaintiffs contend the *Tennessee Tribune* is not a newspaper of general circulation. In particular, Plaintiffs argue the newspaper is not printed in Hamilton County and Defendants had other alternative sources, like the *Chattanooga Times Free Press*, in which it could have published the notice of sale. Moreover, Plaintiffs assert the *Tennessee Tribune* only has a circulation of 25,000.

10

However, in light of *Thacker*, Plaintiffs' arguments based on circulation size and location of printing are not dispositive of this issue. Moreover, in a 2004 opinion, the Tennessee Attorney General found the *Tennessee Tribune* was a "newspaper of general circulation in Davidson, Hamilton, Knox, Madison, Montgomery, Rutherford, Shelby, and Williamson counties," even though the actual newspaper is published in Davidson County. 2004 Tenn. Att'y Gen. Op. No. 04-011 (Feb. 3, 2004). Although a state attorney general's opinion is not binding on any court, such opinions can be used as "persuasive" authority. *Memphis Pub. Co. v. Shelby Cnty. Health Care Corp.*, 799 S.W.2d 225, 231 (Tenn. Ct. App. 1990). Thus, this Court can reasonably conclude Defendants' notice of sale was properly published in the *Tennessee Tribune* and Plaintiffs received proper notice. Accordingly, because Plaintiffs do not appear to have a strong likelihood of success on the merits, at least as it pertains to the issues raised for purposes of this motion, this factor weighs in favor of denying Plaintiffs' motion for a temporary restraining order and preliminary injunction.

### B. Irreparable Harm to Plaintiff

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Wright & Miller, *Federal Practice and Procedure* § 2948.1. Moreover, when the party seeking the injunction has a full and adequate remedy at law, the harm is not irreparable. *See Fort v. Dixie Oil Co.*, 95 S.W.2d 931, 932 (Tenn. 1936).

Plaintiffs aver they will experience irreparable harm if injunctive relief is not granted because their family will be completely uprooted (Court File No. 30). According to Plaintiffs, a detainer warrant has already been filed in state court for Plaintiffs' eviction from the property. Plaintiffs seek this Court's intervention because they are concerned about the effect a sudden

11

eviction will have on the family, particularly on Plaintiff Crystle Moulds, who is homebound and suffers from a terminal medical condition, and on the family's minor children. Although Plaintiffs' circumstances evoke the Court's deepest sympathy, Plaintiffs' harm does not rise to the level of being "irreparable." Tennessee provides a statutory right of redemption for foreclosed property. A debtor has up to two years to redeem his property following a foreclosure sale. Tenn. Code Ann. §§ 66-8-101 to -102. Because of this right, the purchaser of the foreclosed property should be on notice that the sale could be overturned and Plaintiffs' ownership rights could be restored. Moreover, any other harm to Plaintiffs as a result of this action would likely result in an award of damages. Hence, although the harm to Plaintiffs is by no means negligible, neither is it irreparable.

### C.   Harm to Others, Including Defendants

Under this factor, the Court must weigh the potential harm to the defendants against the need to protect the plaintiffs' rights. *USACO Coal Co. v. Carbomin Energy, Inc*., 689 F.2d 94, 99 (6th Cir. 1982). For example, Defendant BNY Mellon Trust asserts it would suffer harm because it would be "enjoin[ed] from the free use and enjoyment of the property that it purchased at the properly noticed foreclosure sale" (Court File No. 17). To deny BNY Mellon Trust from using the property pending resolution of this case or the pending eviction matter in state court would result in significantly more harm to Defendants than Plaintiffs, considering Plaintiffs have already admitted they defaulted on their mortgage payments. Moreover, the foreclosure sale has already taken place and the property has been purchased by BNY Mellon Trust. Thus, this factor weighs in favor of Defendants.

### D.   Public Interest Advanced by Injunctive Relief

In its essence, this is a dispute between private parties. Plaintiffs seek injunctive relief to

avoid being evicted from their property although it is clear Plaintiffs defaulted on their mortgage payments, a foreclosure sale took place, and Defendant BNY Mellon Trust purchased the property. The public has an interest in preventing the violation of applicable laws pertaining to foreclosures. However, it is also clear "the public has an interest in seeing that loans are repaid." *See Senior Hous. Alts., Inc. v. Bernard Global Loan Investors, Ltd.*, No. E2010-01964-COA-R3-CV, 2011 WL 2553260, at *11 (Tenn. Ct. App. June 28, 2011). Here, the public's interest would not likely be advanced by an injunction in this case, because it is not clear the foreclosure would be set aside even if Plaintiffs prevailed on some or all claims. Therefore, this factor does not weigh in favor of granting the injunction.

Having weighed all four factors, the Court finds neither a preliminary injunction nor a temporary restraining order is warranted in this case. Accordingly, the Court **DENIES** Plaintiffs' motion for a temporary restraining order and preliminary injunction (Court File No. 2).

### III. CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiffs' motion for remand to state court (Court File No. 7) and **DENY** Plaintiffs' motion for a temporary restraining order and preliminary injunction (Court File No. 2).

An order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

13